**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| IN RE MICHELLE VENTURA-LINENKO, )<br>)<br>Debtor. )<br>)<br>_____ )<br>)<br>PAGE VENTURES, LLC, )<br>)<br>    Appellant/Cross-Appellee, )<br>v. )<br>)<br>MICHELLE VENTURA-LINENKO, )<br>)<br>    Appellee/Cross-Appellant )<br>_____ ) | 3:10-cv-138-RCJ-RAM<br>3:10-cv-150-RCJ-RAM<br><br>**ORDER** |

Currently before the Court are Page Ventures, LLC's appeal (#138-6); Michelle Ventura-Linenko's cross appeal (#150-7), and Page Ventures, LLC's Motion to Compel Recordation of Satisfaction of Judgment (#138-20).[1]

The Court heard oral argument on March 28, 2011.

**BACKGROUND**

On April 13, 2009, Ventura-Linenko filed for Chapter 13 bankruptcy in the U.S. Bankruptcy Court for the District of Nevada. (Excerpt of Record ("ER") (#138-9) at 3).[2] At the time, she resided at 3065 Markridge Drive, Reno, Nevada, 89509. (*Id.*). In her bankruptcy

///

---

[1] This case involves documents from two different case numbers. The docket citations identify appeal documents, 3:10-cv-138, as #138-X, and cross-appeal documents, 3:10-cv-150, as #150-X. The "X" refers to the docket number in the corresponding case.

[2] The page citations refer to the CM/ECF page numbers.

petition, she listed that she had a pending lawsuit in the Second Judicial District for an injunction. (*Id.* at 27).

On April 14, 2009, Ventura-Linenko filed a complaint in bankruptcy court for an adversary proceeding against Litton Loan Servicing LP, Page Ventures LLC ("Page"), and National Default Servicing Corporation. (*Id.* at 39). With respect to Page, Ventura-Linenko explained that she was commencing an action to set aside the March 18, 2009, foreclosure of her residence and sought declaratory relief that the trustee's deed upon sale was null and void. (*Id.* at 40).

On May 26, 2009, Ventura-Linenko filed a Motion for Sanctions in bankruptcy court against Page and its attorney Mark Forsberg. (*Id.* at 114). The exhibits from that motion and Page's response establish the following. On October 20, 2004, Ventura-Linenko executed a deed of trust and a note for $400,500 for property located at 3065 Markridge Drive. (*Id.* at 127-29). On January 22, 2008, Litton Loan Servicing recorded a notice of default and election to sell because Ventura-Linenko was behind $48,188.72 in her payments. (*Id.* at 144-45). On March 18, 2009, Page purchased the property at a public action. (*See* ER (#138-9-1) at 3-4). On March 25, 2009, the Trustee's Deed Upon Sale was recorded with the Washoe County Recorder's Office. (*Id.* at 3). On April 7, 2009, Page began the eviction process by asking the state justice court to issue an order directing Ventura-Linenko to show cause why she should not be removed from the property. (ER (#138-10) at 85). On April 14, 2009, Ventura-Linenko filed a Notice of Bankruptcy in justice court. (ER (#138-9) at 153). On April 29, 2009, without any prompting from Page, the justice court scheduled a hearing for June 4, 2009, and issued an Order to Show Cause Why a Temporary Writ of Restitution Should Not Issue granting Page an immediate right of possession of the property. (*Id.* at 157-58).

On May 8, 2009, Nevada Court Services, an agent for Page, served Ventura-Linenko with a Five Day Notice to Tenant to Terminate Tenancy at Will. (ER (#138-9-1) at 1; ER (#138-10) at 17). The notice stated that, pursuant to Nevada's eviction laws, she had to relinquish possession of the property on or before May 15th or be subjected to unlawful detainer which could result in a court ordered eviction. (ER (#138-9-1) at 1). On May 11,

1  2009, Ventura-Linenko's attorney, Michael C. Lehners, set a letter to Page's attorney, Mark

2  Forsberg, which stated, in part:

> This letter is to follow up on the conversation my office had with someone from your company wherein we advised you that this office was in receipt of the second 5-day Notice to Quit served at the 3065 Markridge property . . . I am aware of the foreclosure sale and the Trustee's Deed as to the property in question . . . Ms. Linenko has filed a Chapter 13 Bankruptcy, which stops all state court actions against her until the appropriate relief is sought from the bankruptcy court . . . you are to stop all eviction proceedings as to the property. Your actions are in direct violation of the automatic stay provision of the United States Bankruptcy Code. Should you proceed with any further proceedings to try to take possession of the property without seeking the appropriate relief through the Bankruptcy Court, I will seek the appropriate relief against your company through the bankruptcy court, which will include sanctions for violation of the automatic stay. Please govern yourself accordingly.

(*Id.* at 6-7). On May 20, 2009, Page served Ventura-Linenko with a copy of the Order to Show Cause. (*See id.* at 9).

On May 21, 2009, Lehners sent Forsberg a letter that stated the following:

> Please be advised that my client was served with the enclosed Order yesterday despite the fact that you were on notice of her bankruptcy filing back in mid April when we filed the Court the enclosed Notice. Your actions are in violation of the automatic stay and if you do not send to me by the end of the business tomorrow May 22, 2009 that the June 4, 2009 hearing has been vacated and all action has been stopped with respect to the Justice Court action, I will be filing a Motion for Sanctions against you and your client on Tuesday, May 26, 2009. This matter must have your immediate attention. Please govern yourself accordingly.

(*Id.*). On May 22, 2009, Forsberg responded that he was in receipt of the letter and stated that he would "file the appropriate motion in the bankruptcy court next week addressing your contention that the property owned by Page Ventures is part of Ms. Linenko's bankruptcy estate." (*Id.* at 12). On May 26, 2009, Ventura-Linenko filed a Motion for Sanctions against Page and Forsberg. (ER (#138-9) at 114). On May 29, 2009, Forsberg sent Lehners a letter which stated that the "Reno Justice Court hearing on the motion for order to show cause was vacated at [his] request" and that he was filing a motion for relief from the automatic stay. (ER (#138-10) at 22).

In the motion for sanctions, Ventura-Linenko sought actual damages for $350 per hour for attorneys' fees and at least $50,000 in punitive damages. (ER (#138-9) at 119). She argued that Page's actions made her a "very unhappy debtor." (*Id.* at 116). In response, Page

3

argued that it did not violate the automatic stay and asserted that, in its motion for relief from the automatic stay, it had argued that Ventura-Linenko filed the bankruptcy petition in bad faith. (ER (#138-10) at 7). It asserted that its actions did not violate the stay and were not willful. (*Id.*). It contended that it served Ventura-Linenko with the Reno Justice Court order to comply with Nevada law. (*Id.* at 7-8). It asserted that the service of the 5-day notice to quit was inadvertent and was not an intentional act to pursue a pre-petition claim against the debtor. (*Id.* at 8). It argued that, to the extent that Ventura-Linenko was alleging emotional distress, she failed to establish it with requisite certainty or by any evidence. (*Id.* at 9). It argued that the motion for sanctions was wasteful and unnecessary because Page did remove the scheduled hearing from the calendar. (*Id.* at 10). It also argued that punitive damages were not available because its actions were not egregious. (*Id.*).

In support of its motion for sanctions, Ventura-Linenko later filed the Declaration of Rose E. Paiva, Ventura-Linenko's physician. (*Id.* at 26). Dr. Paiva declared the following. In April 2007, Ventura-Linenko came to her office where a physician's assistant diagnosed her with endometriosis and referred her to Dr. Pollock. (*Id.* at 27). Dr. Pollock confirmed the diagnosis of endometriosis and also diagnosed Ventura-Linenko with cervical cancer. (*Id.*). In May 2009, Ventura-Linenko returned to Paiva's office and complained of insomnia, lack of energy, and sleep difficulties, and told Paiva that "her home had been sold at a foreclosure sale, and that the purchaser of the home was attempting to have her evicted." (*Id.*). Paiva stated that the "loss of the home [was] the second most stressful experience for a person to undergo. It [was] second to only the loss of a loved one." (*Id.*). She opined that insomnia, lack of energy, and sleep difficulties were "symptoms one would expect to see in a person who ha[d] undergone acute stress." (*Id.*). Paiva prescribed Ventura-Linenko 20 mg of Lexapro and 2 mg of Lunesta. (*Id.*).

In Ventura-Linenko's declaration, she stated the following. (*Id.* at 29). After filing for bankruptcy she thought that she "did not have to worry about the pending eviction action." (*Id.* at 31). The 5-day notice to quit and vacate the premises "upset" her because she had been "told that the eviction action could not proceed due to [her] bankruptcy." (*Id.*). After receiving

4

a copy of the Reno Justice Court order, she "felt horrible." (*Id.*). She "felt as if the world was closing in [and that it] was difficult enough dealing with [her] cancer and [her] husband's accident, but at least [she] had a home for [her] family . . . [she] felt [that] was going to be taken from [her] too." (*Id.* at 32). Her attorney assured her there would not be an eviction on June 4th. (*Id.*). She found herself "obsessing with the matter" and "could not sleep" and "had no energy." (*Id.*). She "lived in fear that sometime during the day or night [she] would be taken from [her] home" and that she had "no place else to go." (*Id.*). The "lack of sleep made it impossible to enjoy any quality of life" so she visited Dr. Paiva. (*Id.*). After Dr. Paiva told her about the loss of the home being one of the most stressful experiences one could experience, she agreed with that statement. (*Id.*). She felt that she "had absolutely no control over [her] environment" and that she was "about to be thrown out of [her] house at any moment." (*Id.*). She felt "immense sadness and frustration" and stated that it was "one of the most mentally painful events [she had] ever had to endure." (*Id.*).

Page subpoenaed Dr. Paiva's medical records which showed the following. (*Id.* at 42). Ventura-Linenko had visited Dr. Paiva on April 30, 2007, and then again on June 2, 2009, and July 2, 2009. (*Id.* at 65, 68, 72). Ventura-Linenko had been prescribed Lexapro on March 17, 2008, and Lunesta on June 2, 2009. (*Id.* at 70).

In support of the motion for sanctions, Lehners later filed his declaration and attached his billing summary for the motion for sanctions. (*Id.* at 118, 127). On May 11, 2009, Lehners billed Ventura-Linenko .50 hours, or $175, for a telephone conference with her regarding the 5-day notice to quit and for preparing a letter to Forsberg and Page to cease all eviction action. (*Id.* at 127). On May 21, 2009, Lehners billed Ventura-Linenko .40 hours, or $140, for a telephone conference with her regarding the service of the justice court order to show cause and for preparing a letter to Forsberg regarding written confirmation of the cancellation of the unlawful detainer proceeding. (*Id.*). On May 22, 2009, Lehners billed Ventura-Linenko .10, or $35, for reviewing the letter sent from Forsberg dated May 22nd. (*Id.*). That same day, Lehners began legal research on § 362(a), for 2.75 hours, and began preparing the motion

///

for sanctions for 4.80 hours. (*Id.*). On June 18, 2009, Lehners began billing Ventura-Linenko for reviewing the opposition to the motion for sanctions. (*Id.*).

On February 23, 2010, the bankruptcy court granted in part the motion for sanctions and found the following. (*Id.* at 84). On April 13, 2009, creditors were automatically stayed from commencing or continuing any judicial action against the debtor on a claim that arose prior to the bankruptcy case. (*Id.* at 84-85). With respect to emotional distress, the court found that the "evidence of this injury [was] brief yet credible" and noted that it was "uncontradicted." (*Id.* at 87). The court agreed that the prospect of losing one's home was one of the most stressful calamities that could befall anyone and noted that Ventura-Linenko had dealt with that stress and her severe health problems. (*Id.*). The court found that it was "entirely believable that Page's threats to dispossess the debtor and her family would cause significant emotional distress." (*Id.*). The court noted that the doctor corroborated Ventura-Linenko's complaints of insomnia, loss of energy, and depression. (*Id.*). The court awarded her $3,500 for emotional distress. (*Id.* at 95).

The court found that the Ninth Circuit limited the recovery of attorney's fees in *Sternberg v. Johnston*, 595 F.3d 937 (9th Cir. 2009), by holding that a debtor may recover the attorney's fees incurred in "fixing" the problem caused by the violation of the automatic stay, but not the fees incurred to prosecute the action to recover those fees. (*Id.* at 89). The court found that Lehners's billing summary showed that his services primarily related to prosecuting this motion and that those fees could not be recovered. (*Id.* at 90). The court found that the fees incurred for "fixing" Page's attempt to evict the debtor fell into the .50, .40, and .10 hours billed for services on May 11, 21, and 22. (*Id.*). The court found that fees for 1.0 services could be recovered and that the attorney's rate of $350 per hour was reasonable considering his bankruptcy experience. (*Id.* at 90, 95).

The court found that Page did violate the automatic stay. (*Id.* at 95). The court found that once Page received notice that the bankruptcy petition was filed it was required to dismiss or stay the court proceeding and that the failure to do so was a calculated intentional decision. (*Id.* at 94). The court found that Page did take action after the petition was filed to prosecute

the state court action because: (1) it caused a five-day notice to quit to be served upon the debtor, and (2) it served the order to show cause on the debtor after the state court set a hearing. (*Id.* at 93). The court noted that Page was "required to immediately arrange for that hearing to be vacated" and "could not let the hearing remain pending." (*Id.*). The court found that, although the hearing was eventually vacated, Page's first response was to allow the June 4th hearing to remain while it sought relief from the automatic stay. (*Id.*). The court found that Page had vacated the June 4th hearing only after the motion for sanctions was filed. (*Id.*). The court found that Page intentionally violated the automatic stay by failing to act and that its failure to do so was "a calculated intentional decision." (*Id.* at 94). The court found that Page's failure to immediately dismiss or stay the state court action was an intentional and willful violation of the automatic stay. (*Id.* at 95).

With respect to punitive damages, the court noted that the debtor had to demonstrate that Page and its attorney acted with a reckless or callous disregard for her rights as a bankruptcy debtor. (*Id.*). The court noted that, in getting the June 4th hearing cancelled, Ventura-Linenko had to incur significant attorney's fees, only a fraction of which was compensable under 11 U.S.C. § 362(k)(1). (*Id.*). The court found that Page's "reticence to back off in the eviction proceeding was motivated by a desire to coerce the debtor to back off her pending litigation to set aside Litton's foreclosure." (*Id.* at 95-96). The court awarded $3,500 in punitive damages. (*Id.* at 96).

This appeal and cross-appeal now follow.

## STANDARD OF REVIEW

This Court reviews the bankruptcy court's conclusions of law *de novo* and its findings of fact for clear error. *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1213 (9th Cir. 2002). This Court reviews whether a party violates the automatic stay provisions of 11 U.S.C. § 362(a) *de novo*. *Id.* This Court reviews whether a party has "willfully" violated the automatic stay for clear error. *Id.*

This Court reviews the amount of sanctions imposed for a willful violation of the stay for abuse of discretion. *Id.* This Court reviews the bankruptcy court's decision whether to award

emotional distress damages and the amount for abuse of discretion. *In re Dawson*, 390 F.3d 1139, 1150 (9th Cir. 2004). This Court reviews a bankruptcy court's award of attorneys' fees for abuse of discretion or erroneous application of the law. *Id.* at 1145.

## DISCUSSION

On appeal, 3:10-cv-138, Page raises two issues: (1) whether the bankruptcy court erred in awarding damages to the debtor for emotional distress resulting from a violation of the automatic stay, and (2) whether the bankruptcy court erred in awarding punitive damages based on the conduct of Page or its attorney. (Amended Opening Brief (#138-6) at 5).

On cross-appeal, 3:10-cv-150, Ventura-Linenko raises three issues: (1) was it error for the bankruptcy court to award only $350 in attorneys' fees as a result of Page's willful violation of the automatic stay; (2) was it error for the bankruptcy court to award only $3,500 in emotional distress damages; and (3) was it error for the bankruptcy court to award only $3,500 in punitive damages. (Opening Brief (#150-7) at 4).

This Order addresses these issues in the following order: violation of automatic stay, attorneys' fees, emotional distress, and punitive damages.

### A.   Violation of Automatic Stay

As an initial matter, the underlying issue to this appeal is whether Page violated the automatic stay pursuant to 11 U.S.C. § 362. Instead of directly addressing this issue, Page attempts to deflect its own fault by arguing that Ventura-Linenko had filed her bankruptcy petition in bad faith. (*See* Amended Opening Brief (#138-6) at 15). Page argues that, at the time Ventura-Linenko filed her petition, she knew that her home had been foreclosed upon, sold at a trustee's sale, and that she had not paid her mortgage in two years. (*Id.* at 18). It argues that the bankruptcy court eventually agreed with it when the court later granted Page's motion to lift the automatic stay. (*Id.*). Page admits that it did not seek to have the automatic stay retroactively annulled. (*Id.*).

Ventura-Linenko responds that Page cannot argue that its violation of the stay was excusable because she filed the petition in bad faith. (Answering Brief (#138-8) at 7). Moreover, it argues that there is no evidence in the record to establish that she had filed the

8

petition in bad faith and reiterates that Page never filed for an annulment of the automatic stay as a result of the alleged bad faith. (*Id.*).

"When a debtor files for bankruptcy, he is immediately protected by an automatic stay under 11 U.S.C. § 362(a)." *Sternberg*, 595 F.3d at 943. Section 362(a) provides that a bankruptcy petition, among other things

> operates as a stay, applicable to all entities, of . . . the commencement or continuation, . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a)(1). Under § 362, "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1).

The automatic stay "imposes on non-debtor parties an affirmative duty of compliance" to "discontinue the action once it gain[s] knowledge of the bankruptcy." *Sternberg*, 595 F.3d at 943-44. In order for a non-debtor to comply with his affirmative duty, he "needed to do what he could to relieve the violation" and "could not simply rely on the normal adversarial process." *Id.* at 945. An automatic stay "requires an immediate freeze of the status quo by precluding and nullifying post-petition actions." *Eskanos*, 309 F.3d at 1214.

"A willful violation is satisfied if a party knew of the automatic stay, and its actions in violation of the stay were intentional." *Id.* at 1215. A willful violation does not require specific intent to violate the automatic stay. *In re Bloom*, 875 F.2d 224, 227 (9th Cir. 1989). "Whether the party believes in good faith that it had a right to the property is not relevant to whether the act was 'willful.'" *Id.*

In this case, the record establishes that Page violated the automatic stay because it did not take affirmative action to dismiss or vacate the June 4th order to show cause hearing after being notified of Ventura-Linenko's bankruptcy petition on April 14th. (*See* ER (#138-9) at 153). Instead, Page continued to engage in the adversarial process by permitting Nevada Court Services to serve Ventura-Linenko with a Five Day Notice to Tenant to Terminate Tenancy at Will. (*See* ER (#138-10) at 17). Furthermore, after Ventura-Linenko's attorney

informed Page that it was violating the automatic stay, Page continued to engage in the adversarial process by serving Ventura-Linenko with the Order to Show Cause. (*See* ER (#138-9-1) at 6-7, 9). Page did not affirmatively discontinue the action in justice court until May 29th. (*See* ER (#138-10) at 22). Accordingly, Page violated the automatic stay between April 14th and May 29th.

Additionally, the record supports the bankruptcy court's finding that Page intentionally failed to dismiss or stay the justice court proceeding after learning of the bankruptcy petition and, thus, willfully violated the automatic stay. (*See* ER (#138-10) at 94). After Ventura-Linenko's attorney notified Page for the second time that it was violating the automatic stay, Page responded that it had received Ventura-Linenko's letter and that it was going to "file the appropriate motion in the bankruptcy court next week addressing [Ventura-Linenko's] contention that the property owned by Page Ventures [was] part of [her] bankruptcy estate." (*See* ER (#138-9-1) at 12). This letter demonstrates that Page not only knew of the automatic stay, but was intentionally choosing to maintain the justice court action until it could challenge whether the property was part of the bankruptcy estate. This was an intentional failure to act. Accordingly, the bankruptcy court did not commit clear error in finding that Page willfully violated the automatic stay.

**B.    Attorneys' Fees**

Ventura-Linenko argues that her attorney spent 26.45 hours to stop the eviction proceedings and file the motion for sanctions. (Opening Brief (#150-7) at 7). She asserts that the bankruptcy court held a hearing on the motion for sanctions before *Sternberg* was published, and that the bankruptcy court did not give counsel an opportunity to file additional briefs in light of this event. (*Id.* at 12). She argues that, had the court given her an opportunity to brief *Sternberg*, she would have argued that her attorney's fees for prosecuting the motion were actual damages because she is obligated by contract to pay for them. (*Id.*). She asserts that she agreed to pay her attorney $350 per hour. (*Id.* at 13).

In response, Page argues that, if attorneys' fees were proper, the bankruptcy court correctly applied the *Sternberg* holding. (Answering Brief (#150-10) at 13). Page asserts that

10

1  Ventura-Linenko is not arguing that the bankruptcy court erroneously applied the law or
2  abused its discretion, but, instead, is trying to raise for the first time on appeal a factual
3  distinction between her case and *Sternberg*. (*Id.*). Page argues that, if the attorney is entitled
4  to fees, the attorney is only entitled to $350. (*Id.* at 15).

5   In reply, Ventura-Linenko argues that attorneys' fees can be actual damages when the
6  client is under a legal obligation to pay them to obtain a remedy for tortious conduct. (Reply
7  Brief (#150-11) at 4).

8   Under § 362, "an individual injured by any willful violation of a stay provided by this
9  section shall recover actual damages, including costs and attorneys' fees, and, in appropriate
10 circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1). In *Sternberg*, the
11 Ninth Circuit focused on the term "actual damages." *Sternberg*, 595 F.3d at 947. In doing so,
12 the Court held that actual damages are the amounts awarded to compensate for a proven
13 injury. *Id.* The proven injury in § 362 is the "injury resulting from the stay violation itself" and
14 once "the violation has ended, any fees the debtor incurs after that point in pursuit of a
15 damage award would not be to compensate for 'actual damages'" under the section. *Id.*

16  The *Sternberg* Court explained that the two purposes of the automatic stay are: (1) to
17 enable the debtor to try to reorganize during a break from collection efforts, and (2) to protect
18 creditors by preventing one creditor from pursuing its own remedies to the detriment of its co-
19 creditors. *Id.* The Court explained that the stay is to achieve financial and non-financial goals,
20 including giving the debtor time to put finances back in order and to create "a breathing spell"
21 for a debtor from his creditors. *Id.* at 948. The Court reasoned that "[p]ermitting a debtor to
22 collect attorney fees incurred in prosecuting a damages action would further neither the
23 financial nor the non-financial goals of the automatic stay." *Id.* The Court explained that the
24 stay "is meant to help the debtor deal with his bankruptcy for the benefit of himself and his
25 creditors alike. We have never said the stay should aid the debtor in pursuing his creditors,
26 even those creditors who violate the stay. The stay is a shield, not a sword." *Id.* The Court
27 explained that allowing attorneys' fees for a damages action would not promote the non-
28 financial goals of the automatic stay because it would not create a breathing spell for the

debtor. *Id.* The Court held that "a damages action for a stay violation is akin to an ordinary damages action, for which attorney fees are not available." *Id.*

In this case, the bankruptcy court did not abuse its discretion or erroneous apply the law when it found that *Sternberg* distinguished between the fees incurred in fixing the problems caused by the automatic stay violation and the fees incurred to prosecute the violation of the automatic stay. (*See* ER (#138-10) at 89). The bankruptcy court properly recognized that, pursuant to Lehners' billing statement, he spent 1.0 hours, or $350, to enforce the automatic stay. (*See id.* at 90). Accordingly, the bankruptcy court did not abuse its discretion, and the Court affirms the award of $350 in attorneys' fees.

### C.    Emotional Distress Damages

Page argues that the bankruptcy court erred in awarding damages for emotional distress because the evidence failed to demonstrate that Ventura-Linenko suffered significant emotional harm. (Amended Opening Brief (#138-6) at 21). It argues that Ventura-Linenko's complaints to her doctor demonstrate that she suffered emotional distress from the foreclosure and the eviction, but nothing from the automatic stay violation. (*Id.*). It asserts that her stress was not related to the notice of hearing or the notice to quit. (*Id.* at 22). It argued that Ventura-Linenko suffered fleeting or trivial anxiety that was inconsequential and did not result from any egregious conduct by Page. (*Id.*).

In response, Ventura-Linenko argues that she provided a sworn declaration from her physician corroborating her symptoms of emotional distress. (Answering Brief (#138-8) at 8). On cross-appeal, Ventura-Linenko asserts that she should have received around $20,000 in emotional distress damages because debtors in other cases did. (*See* Opening Brief (#150-7) at 21-22).

Emotional distress damages are cognizable under § 362. *Dawson*, 390 F.3d at 1148.[3] A "claim for emotional distress damages is available if the individual provides clear evidence

---

[3] *Dawson* discusses whether emotional damages are recoverable as actual damages under § 362(h). However, after the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, § 362(k)(1) is the relevant section.

12

to establish that significant harm occurred as a result of the violation." *Id.* at 148-49. Because the courts are concerned with limiting frivolous claims, "not every willful violation merits compensation for emotional distress." *Id.* at 1149.

To be entitled to emotional distress damages under § 362(k)(1), an individual must: "(1) suffer significant harm, (2) clearly establish the significant harm, and (3) demonstrate a causal connection between that significant harm and the violation of the automatic stay (as distinct, for instance, from the anxiety and pressures inherent in the bankruptcy process)." *Id.* "Fleeting or trivial anxiety or distress does not suffice to support an award; instead, an individual must suffer significant emotional harm." *Id.* An individual must establish that he or she was injured by the violation to be eligible to claim actual damages. *Id.* at 1150.

A person may establish that he or she suffered significant emotional harm in several ways. *Id.* at 1149. First, the person could offer corroborating medical evidence. *Id.* Second, non-experts, such as family members, friends, or coworkers may testify to manifestations of mental anguish. *Id.* Third, if the violator engaged in egregious conduct, the significant emotional distress may be readily apparent without corroborative evidence. *Id.* at 1150. To illustrate, a creditor engaged in egregious conduct when he entered the debtor's home at night, doused the lights, and pretended to hold a gun to the debtor's head. *Id.* Fourth, even if the conduct is not egregious, the circumstances may make it obvious that a reasonable person would suffer significant emotional harm. *Id.* To illustrate, a debtor suffered emotional harm when she was forced to cancel her son's birthday party because her checking account had been frozen. *Id.*

In this case, Dr. Paiva's medical records and declaration corroborate Ventura-Linenko's claims of insomnia, lack of energy, and sleep difficulties during the automatic stay period. (*See* ER (#138-10) at 27). Dr. Paiva's declaration notes that Ventura-Linenko mentioned that the purchaser of her home was attempting to have her evicted, which Page was trying to do with the unlawful detainer suit. (*See id.*). Therefore, Ventura-Linenko did establish that she was suffering significant emotional harm during the period of the violation of the automatic stay, i.e. April 14th through May 29th. Accordingly, the bankruptcy court did not abuse its

discretion in awarding $3,500 in emotional distress damages for that period and this Court affirms the award.

### D.     Punitive Damages

Page argues that the bankruptcy court erred in awarding punitive damages because it engaged in minimal conduct when it attempted to gain control of property that it had lawfully purchased at a trustee's sale. (Amended Opening Brief (#138-6) at 26). It argues that the bankruptcy court failed to identify any of the factors to justify the award of punitive damages. (*Id.* at 26-27).

In response, Ventura-Linenko argues that punitive damages cannot be overturned unless they are monstrously excessive, born of passion and prejudice, or not rationally connected to the evidence. (Answering Brief (#138-8) at 9). She argues that Page only took the eviction off the hearing calendar after counsel filed a motion for sanctions and that the eviction hearing would have gone on but for the motion for sanctions. (*Id.*). On cross-appeal, she argues that she should have been awarded more than $3,500 in punitive damages because the bankruptcy court failed to take any evidence of Page or Forsberg's net worth before imposing the sanction. (Opening Brief (#150-7) at 24). She argues that the proper amount of punitive damages cannot be ascertained without the culpable party's net worth. (*Id.*). She argues that the matter should be remanded and that the small amount awarded is not enough to deter future conduct. (*Id.* at 25).

In reply, Page argues that Ventura-Linenko failed to provide evidence of Page's financial wherewithal, to no fault of the bankruptcy court. (Answering Brief (#150-10) at 18). It asserts that Ventura-Linenko presented no evidence to the support any particular amount of punitive damages to the court and that failure should not be laid at the feet of the bankruptcy court. (*Id.*).

Generally, the Ninth Circuit requires "some showing of reckless or callous disregard for the law or rights of others" for an award of punitive damages under § 362. *Bloom*, 875 F.2d at 228. In reviewing a punitive damages award, the goal is to determine "whether the punitive damages achieved their ultimate objectives of deterrence and punishment, without being

unreasonable or disproportionate." *S. Union Co. v. Irvin*, 563 F.3d 788, 791 (9th Cir. 2009). A court should consider the following guideposts: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *Id.* When the parties do not provide evidence of the last guidepost, the court considers the other two guideposts. *See id.* The first guidepost is the most important. *Id.*

In this case, the bankruptcy court did not abuse its discretion when it awarded punitive damages. The record supports the bankruptcy court's finding that Ventura-Linenko did have to incur significant attorney's fees in order to get Page to cancel the June 4th hearing. (*See* ER (#138-10) at 95). The record also supports the finding that Page's reluctance to cancel the hearing was motivated by a desire to coerce Ventura-Linenko to back off of her pending litigation to set aside the foreclosure. (*See id.* at 95-96). Therefore, the bankruptcy court did find that Page engaged in a reckless or callous disregard for the automatic stay.

Additionally, in analyzing the guideposts, Page's actions were low on the reprehensibility scale because it only served her with a 5-day notice to quit and an order for a hearing. With respect to the second guidepost, there is a small difference between the actual damages of $3,850 for emotional distress and attorneys' fees and the $3,500 award for punitive damages. Therefore, the punitive damages award appears to deter and punish a very low reprehensible act with a sufficient amount of monetary deterrence. Thus, the bankruptcy court did not abuse its discretion in its punitive damages award and this Court affirms the award.

Accordingly, this Court affirms the bankruptcy court's order. Additionally, as part of this appeal, this Court orders the bankruptcy court to order Ventura-Linenko to record a satisfaction of judgment in favor of Page and Forsberg.

///

///

///

**CONCLUSION**

For the foregoing reasons, IT IS ORDERED that the bankruptcy court's order is AFFIRMED.

IT IS FURTHER ORDERED that the bankrupcty court order Ventura-Linenko to record a satisfaction of judgment in favor of Page Ventures, LLC and Mark Forsberg, Esq.

DATED: This __1__ day of April, 2011.

_____
United States District Judge